UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| OSCAR MACIAS, | No. CV 15-9892-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on December 23, 2015, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on February 24, 2016, and September 27, 2016. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on September 26, 2016, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

## II.

## **BACKGROUND**

Plaintiff was born on April 10, 1960. [Administrative Record ("AR") at 19, 176, 178.] He has past relevant work experience as a heating and air conditioning servicer, a glazier repair person, and a warehouse order selector. [AR at 18, 52-53.]

On December 6, 2011, plaintiff filed an application for a period of disability and DIB, and on December 13, 2011, he filed an application for SSI payments, alleging that he has been unable to work since January 1, 2006. [AR at 18, 176-77, 178-79.] After his applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 18, 264-65.] A hearing was held on December 17, 2013, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 32-59.] A vocational expert ("VE") also testified. [AR at 50-57.] On March 13, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability "during the relevant period [from June 15, 2011] through [March 13, 2014,] the date of this decision."[1] [AR at 20.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 7.] When the Appeals Council denied plaintiff's request for review on November 20, 2015 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

/

---

[1] Plaintiff filed prior applications in December 2006, which were dismissed in May 2008. [AR at 12.] He also filed applications in August 2010, which were denied on reconsideration on June 14, 2011, and not appealed. [Id.] In this case, the ALJ noted that plaintiff's current applications "constitute requests to reopen denials of prior applications inasmuch as continuing disability is alleged since January 1, 2006." [Id.] Finding no basis for reopening the prior determinations, the ALJ addressed only plaintiff's current applications, finding that "[t]he administrative determinations of June 14, 2011 are final and binding with respect to [plaintiff's] disability on or prior to that date," and "[a]ny reference to [plaintiff's] medical condition on or prior to that date is for historical and comparison purposes only and is not to be construed as a reopening and reconsideration of the merits of the prior claims." [Id.] He therefore restricted the period at issue "to the period from June 15, 2011 and thereafter." [Id.] Plaintiff argues herein that the ALJ's decision is not supported by substantial evidence in light of the fact that he limited his review of the record to the period at issue. [JS at 3.]

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

1992).

## A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

## B. THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity

"during the relevant period."[2] [AR at 15; see supra n.1.] At step two, the ALJ concluded that plaintiff has the severe impairments of degenerative disc disease and degenerative arthritis of the cervical and lumbar spines and degenerative joint disease of the bilateral hips. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 16.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b),[4] as follows:

> [Can] lift and carry 20 pounds occasionally and 10 pounds frequently; he can stand and walk or sit 6 hours of an 8 hour day, but must have the opportunity to use a cane to ambulate; he can occasionally kneel, squat and climb; and he can occasionally reach above shoulder level with the bilateral upper extremities.

[Id.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of his past relevant work as a heating and air conditioning servicer, a glazier repair person, and a warehouse order selector. [AR at 18.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "small product assembler" (Dictionary of Occupational Titles ("DOT") No. 706.684-022), "garment sorter" (DOT No. 222.687-014), and "merchandise marker" (DOT No. 209.587-034). [AR

---

[2] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through September 30, 2011. [AR at 15.]

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

at 31, 76-79.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from June 15, 2011, through March 13, 2014, the date of the decision. [See AR at 20.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) found at step five that plaintiff could perform alternate work, given his bilateral overhead reaching limitation and need for a cane while ambulating; (2) limited his review to only the evidence from June 15, 2011, through the date of the decision; and (3) rejected plaintiff's subjective symptom testimony. [JS at 3.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

**A.  STEP FIVE DETERMINATION**

Plaintiff's RFC limits him to occasional reaching above shoulder level with his bilateral upper extremities, and the ALJ's hypothetical to the VE included these limitations. [AR at 16, 54 ("the individual can also occasionally reach with either upper extremity above shoulder level").] The DOT describes the physical demands for the occupations of small product assembler, garment sorter, and merchandise marker as each requiring frequent reaching. [JS at 4 (citing DOT Nos. 706.684-022, 222.687-014, 209.587-034, respectively).] Reaching is described by the Social Security Administration as "extending the hands and arms *in any direction*." Soc. Sec. Ruling ("SSR")[5] 85-15 (emphasis added); see Mkhitaryan v. Astrue, 2010 WL 1752162, at *3 (C.D. Cal. Apr. 27, 2010) (citing the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("Selected Characteristics of Occupations"), app. C). "'Any direction' would appear to include overhead." White v. Colvin, 2016 WL 4402798, at *4 (C.D. Cal.

---

[5] "The Commissioner issues [SSRs] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

Aug. 17, 2016). Consequently, "many courts have discerned a conflict between the requirement of frequent reaching and a preclusion or restriction on reaching overhead or above the shoulder." Id. (citing cases finding a conflict). As evidenced in part by the competing case law presented by the parties [compare JS at 4-6 with JS at 9-10], case law on this issue is not uniform. White, 2016 WL 4402798, at *4 n.5 (citing cases finding no conflict).

Because the DOT job descriptions for the three occupations suggested by the VE do not distinguish between the kind of reaching involved (front, lateral, or overhead), plaintiff argues that the reaching requirement for these positions exceeds his functional limitations and, because the ALJ failed to identify and obtain a reasonable explanation from the VE regarding this deviation from the DOT, reversal is warranted. [JS at 4-6.] Plaintiff also argues that his RFC requiring use of a cane is also in conflict with the definition of light work, which "'requires a good deal of walking and standing.'"[6] [JS at 6 (citing SSR 83-10)]. He notes that "at the sedentary exertional level, [he] would have been disabled using the GRID rules . . . [and he] argued repeatedly throughout the administrative process that the GRID rules applied to his case." [JS at 6-7 (citing AR at 262-65).]

Defendant contends that there was no conflict between the VE's testimony and the DOT that the ALJ failed to resolve. [JS at 7.] The hypotheticals to the VE included plaintiff's reaching limitation and use of a cane for ambulation, and the VE testified that such an individual could work in the three representative occupations of small product assembler, garment sorter, and merchandise marker. [JS at 7-8.] Additionally, the ALJ asked the VE if her testimony was "consistent with the [DOT] and [its companion publication] The Selected Characteristics of Occupations, unless otherwise stated," and the VE replied "Yes, Your Honor."[7] [JS at 8 (citing AR

---

[6] Because the matter is being remanded for consideration of any inconsistency between plaintiff's limitation to occasional overhead reaching bilaterally and the DOT job descriptions for the representative occupations testified to by the VE, the ALJ on remand shall also consider any inconsistency between plaintiff's need for a cane to ambulate and those job descriptions.

[7] At no point did the VE testify that her testimony was inconsistent with the DOT with regard to plaintiff's reaching limitation or his need for a cane to ambulate. [See generally AR at 50-57.] The VE did testify that an individual who must have the option to ambulate with a handheld cane would not be able to perform other jobs that she had previously identified as available for someone
(continued...)

7

at 57).] Defendant argues that because plaintiff admits that the authority on whether such a conflict is "apparent" is split, this indicates "that there was no 'apparent conflict,' and the ALJ properly fulfilled his duty when he asked the VE if her testimony was consistent with the *DOT*." [JS at 9.]

In determining whether appropriate jobs exist for a claimant, or whether the claimant can perform his past relevant work, the VE generally will refer to the DOT. See Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997). The DOT is usually "the best source for how a job is generally performed." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001). SSR 00-4p explicitly requires that the ALJ determine whether the VE's testimony deviates from the DOT, and whether there is a reasonable explanation for any deviation. See SSR 00-4p (stating that an ALJ must inquire whether a VE's testimony regarding "the requirements of a job or occupation" conflicts with the DOT).[8] The procedural requirements of SSR 00-4p ensure that the record is clear as to why

---

[7](...continued)
without this need. [AR at 54-55.] For the hypothetical including the need for use of a cane, she replaced the jobs of cashier and counter clerk with the jobs of garment sorter and merchandise marker. [AR at 55.]

[8] SSR 00-4p provides in relevant part:

> When a VE . . . provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT. . . .
> . . . .
> If the VE's . . . evidence appears to conflict with the DOT, the [ALJ] will obtain a reasonable explanation for the apparent conflict.
> . . . .
> When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p (emphasis added). SSR 00-4p similarly provides that "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or
(continued...)

an ALJ relied on a VE's testimony, particularly in cases where the expert's testimony conflicts with the DOT. Massachi, 486 F.3d at 1153. In making disability determinations, the ALJ may rely on VE testimony that contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation. Light, 119 F.3d at 793; Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); Massachi, 486 F.3d at 1153. Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict." SSR 00-4p. Thus, the ALJ must first determine whether a conflict exists, and if it does, he must then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. Id.

Only after determining whether the testimony of the VE has deviated from the DOT, and whether any deviation is reasonable, can an ALJ properly rely on the VE's testimony as substantial evidence to support a disability determination. Massachi, 486 F.3d at 1152-54. Evidence sufficient to support a deviation from the DOT may be either specific findings of fact regarding a claimant's ability to perform particular jobs, or inferences drawn from the context of the expert's testimony. See Light, 119 F.3d at 1435 n.7 (ALJ provided sufficient support for deviation by noting that the VE described characteristics and requirements of jobs in the local area consistent with claimant's RFC); Terry v. Sullivan, 903 F.2d 1273, 1279 (9th Cir. 1990) (ALJ may infer support for deviation where VE's understanding of applicable legal standards is clear from context).

Here, as discussed above, the three representative occupations as identified by the VE are defined by the DOT as requiring "frequent" reaching, which appears to conflict with plaintiff's limitation to only occasional overhead reaching with his upper extremities. See Carpenter v. Colvin, 2014 WL 4795037, at *8 (E.D. Cal. Sept. 25, 2014); see also Kemp ex rel. Kemp v. Colvin, 743 F.3d 630, 633 (8th Cir. 2014). At a minimum, therefore, because there is a *potential* conflict between the VE's testimony about the ability of an individual with plaintiff's overhead reaching limitation to perform the three alternative occupations and the DOT descriptions of those jobs, an

---

[8](...continued)
decision about whether the claimant is disabled." Id. (emphasis added).

9

explanation of that deviation is necessary. Carpenter, 2014 WL 4795037, at *8 (testimony that a claimant limited to occasional overhead reaching can nonetheless perform frequent reaching is the type of deviation that should be resolved by explanation from the VE) (citing Winder v. Astrue, 2013 WL 489611, at *2 (C.D. Cal. Feb. 6, 2013)); Richardson v. Astrue, 2012 WL 1425130, at *4 (C.D. Cal. Apr. 25, 2012) (reaching in "any" direction plainly encompasses overhead reaching, therefore VE's testimony deviated from DOT and the ALJ was required to obtain "persuasive evidence" to explain the deviation). In this case, the VE testified that her opinions were consistent with the DOT and its companion publication, the Selected Characteristics of Occupations, "unless otherwise stated," but she never otherwise identified or indicated any inconsistency or conflict based on the overhead reaching limitation. Moreover, in his decision the ALJ simply determined, without explanation for the potential reaching conflict, that "the vocational expert's testimony is consistent with the information contained in the [DOT]." [AR at 19.]

Defendant argues that "the ALJ asked the VE if her testimony was consistent with the *DOT*, and Plaintiff's counsel cross-examined the VE but did not question whether any conflicts existed" and, therefore, "the ALJ properly relied on the VE's testimony." [JS at 12 (citations omitted).] However, it is the ALJ who bears the burden of making the necessary inquiry of the VE. SSR 00-4p; see also Massachi, 486 F.3d at 1152-53; see Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even when the claimant is represented by counsel). Here, the ALJ inquired only whether the VE's testimony was consistent with the DOT, and the VE failed to identify any potential conflict or deviation from the DOT as to the reaching limitation, or to provide any explanation to resolve the potential or apparent conflict. While counsel is not supposed to be a "potted plant" at the administrative hearing, the cases relied on by defendant, Solorzano v. Astrue, 2012 WL 84527 (C.D. Cal. Jan. 10, 2012), Wentz v. Comm'r of Soc. Sec. Admin., 401 F. App'x 189, 191 (9th Cir. 2010), and Philpott v. Colvin, 2015 WL 4077307, at *7 (C.D. Cal. July 6, 2015), none of which are binding precedent, are distinguishable on one or more of the following grounds: (1) the ALJ's alleged error occurred at step four where the burden is still

on the claimant and not, as here, at step five, where the burden is on the Commissioner; (2) the ALJ never asked the VE whether his testimony conflicted with the DOT; (3) there was a lack of an actual or apparent conflict supported by the record; or (4) the VE sufficiently explained his or her variation from the DOT so that there was no conflict, or the conflict was harmless. See Norris v. Colvin, 2013 WL 5379507, at *2-3 (C.D. Cal. Sept. 25, 2013) (distinguishing Wentz); see Marquez v. Astrue, 2012 WL 3011779, at *2-3 (D. Ariz. July 23, 2012) (ALJ "cannot simply rely on the VE's testimony that no such conflicts exist"). Moreover, "[c]laimants 'need not preserve issues in proceedings before the Commissioner or her delegates.'" Norris, 2013 WL 5379507, at *3 (citing cases); Gonzales v. Astrue, 2012 WL 2064947, at *4 (E.D. Cal. June 7, 2012) ("[T]he fact that Plaintiff's representative did not challenge the VE's testimony as inconsistent with the DOT at the time of the hearing is not conclusive as to whether an apparent conflict exists, nor does it constitute a waiver of the argument.") (citing Sims v. Apfel, 530 U.S. 103, 111-12, 120 S. Ct. 2080, 147 L. Ed. 2d 80) (2000)).

Thus, absent a reasonable explanation for the conflict -- and defendant has pointed to no persuasive evidence in the record to explain this deviation -- an ALJ cannot properly rely on the VE's testimony as substantial evidence to support a disability determination. Massachi, 486 F.3d at 1152-54; SSR 00-4p. Moreover, Massachi "does not suggest that the ALJ need look no further than the VE's testimony in order to meet his obligation under SSR 00-4p to search for conflicts between the VE and the DOT." Marquez, 2012 WL 3011779, at *2-3. Instead, Massachi "construes SSR 00-4p as 'explicitly requiring that the ALJ determine whether the expert's testimony deviates from the [DOT] and whether there is a reasonable explanation for any deviation.'" Marquez, 2012 WL 3011779, at * 2. Here, the ALJ relied on VE testimony that conflicted with the DOT, and the ALJ was therefore required to explain the deviation by making either specific factual findings or drawing inferences from the context of the VE's testimony. See Light, 119 F.3d at 793. He did not do so. Instead, the record contains only the VE's conclusion that plaintiff can perform work requiring "frequent reaching" despite an RFC limiting him to occasional overhead reaching bilaterally, and the ALJ's unsupported determination that the VE's

testimony did not conflict with the DOT despite this job requirement and plaintiff's RFC overhead reaching limitations. "Where an ALJ fails to obtain an explanation for and resolve an apparent conflict -- even where the VE did not identify the conflict -- the ALJ errs." Richardson, 2012 WL 1425130, at *5.

Remand is required to obtain VE testimony to resolve the inconsistency between plaintiff's limitation to overhead reaching bilaterally, with the DOT job descriptions for the three representative occupations. Massachi, 486 F.3d at 1155.

**B.     REVIEW OF EVIDENCE PRIOR TO JUNE 15, 2011**

In his decision, the ALJ indicated that "no basis for reopening of the prior determinations is shown," and "[a]ny reference to [plaintiff's] medical condition on or prior to [June 15, 2011,] is for historical and comparison purposes only and is not to be construed as a reopening and reconsideration of the merits of the prior claims." [AR at 12.] Plaintiff contends that the ALJ erred by "refusing to consider evidence prior to June 15, 2011." [JS at 14.] He argues that the "evidence that pre-dated [plaintiff's] filing date [of December 6, 2011,] further undermines the ALJ's wobbly credibility assessment and his findings at Step Two with respect to [plaintiff's] RFC." [Id.] He submits that the ALJ failed to apply the appropriate standard for re-opening a matter as plaintiff's most recent applications were denied on reconsideration on June 14, 2011, and the instant applications were filed in December 2011 -- within the window for "re-opening for 'any reason'" as permitted by 20 C.F.R. §§ 404.988 and 416.1488 ("A redetermination, revised determination, decision, or revised decision may be re-opened . . . within 12 months of the notice of the initial determination for any reason."). [JS at 14-15.] Plaintiff argues that the evidence prior to the filing date concerned plaintiff's medical condition as it existed since his filing date, and "provided objective medical evidence of his underlying impairments and also contained valuable opinion evidence regarding additional manipulative limitations." [Id.] Plaintiff concludes that the ALJ's failure to "consider substantial medical evidence of record," means that the Court cannot conclude that the ALJ properly considered whether there was evidence of an impairment that

could reasonably produce the symptoms alleged by plaintiff in conducting the first step in his analysis of plaintiff's subjective symptom testimony.[9] [JS at 16.]

In arriving at his decision that plaintiff's complaints of debilitating bilateral hand pain were not supported by the evidence, the ALJ reviewed November 2007 radiographs that showed evidence of "diffuse osteopenia . . . and evidence of old fracture deformity . . . with secondary degenerative changes," but noted that after June 15, 2011, "the record is devoid of significant related treatment" for hand pain. [AR at 15 (citing AR at 416).] Although May 2011 treatment records reflect that plaintiff complained of bilateral hand pain, plaintiff also reported that the pain was "on and off and relieved by pain medication"; later treatment records are devoid of any hand-related pain complaints, and reflect normal extremity-related findings. [Id. (citing AR at 278, 284, 290).] In his March 2012 report, the consultative orthopedic examiner, H. Harlan Bleecker, M.D., noted "triggering of the third, fourth and fifth fingers of the non-dominant left hand," but otherwise normal motor strength at the extremities. [JS at 15-16 (citing AR at 433).] Dr. Bleecker did not suggest any handling or fingering limitations. [AR at 431-35.] The ALJ gave Dr. Bleeker's findings "great weight." [AR at 17.] In contrast, the ALJ noted that in March 2012 and December 2012 assessments, the state agency physicians "concurred with some of Dr. Bleecker's light functional restrictions, but noted that [plaintiff] should be limited to frequent left hand handling and fingering and bilateral overhead reaching," "occasional crawling and frequent crouching, stooping, balancing and ramp/stair climbing," but "made no allowances for the use of a cane." [AR at 17 (citations omitted).] The ALJ gave Dr. Bleecker's assessment more weight in light of his "greater expertise as an orthopedic specialist, and his direct examination" of plaintiff, and because he took into consideration plaintiff's subjective complaints and his assessed degenerative back, neck, and hip conditions. [AR at 17-18.] He gave the opinions of the state agency physicians less weight and noted that Dr. Bleecker "did not feel that his finding of left finger triggering was significant enough to warrant any manipulative restrictions based on his other physical and neurological examination

---

[9] Plaintiff notes that he turned 50 years old between the previous applications and the current ones, thereby changing age categories. [JS at 18.]

13

findings." [AR at 17-18.] Notwithstanding this determination, the ALJ asked the VE to consider an individual who is limited to frequent handling and fingering with the non-dominant hand, and the VE testified that such an individual could still perform the three representative occupations. [AR at 56.] Plaintiff points to no evidence, before or after June 15, 2011, that would support a limitation to only occasional handling and fingering with his non-dominant hand.

With respect to plaintiff's alleged "bilateral knee pain," the ALJ noted that there was "no evidence of any knee related treatment during the relevant period from June 15, 2011." [AR at 16 (citations omitted).] The ALJ noted Dr. Bleecker's March 2012 report that showed "normal knee related clinical findings." [Id. (citing AR at 433).] In response, plaintiff points to a February 5, 2009, x-ray of his left knee that he claims shows Osgood-Schlatter's disease. [JS at 20 (citing AR at 76).] That x-ray, however, actually showed "chronic calcification just anterior to the tibial tuberosity which may be related to *old* Osgood-Schlatter and/or non-united ossification center." [See AR at 412 (emphasis added).] That report concluded that there was no "acute osseous abnormality or significant degenerative change" [id.], and the treatment notes indicate that plaintiff attributed his knee pain at that time to a fall he had taken off his bike in the prior month and that was still hurting. [AR at 347, 348.] Plaintiff points to no other records to support his allegations of continuing and debilitating knee pain.

With regard to plaintiff's "alleged debilitating back pain," the ALJ reviewed November 2007 x-rays that showed "L5 spondylolysis with grade I anterolisthesis of L5 on S1 and degenerative changes." [AR at 16-17 (citing AR at 417).] He noted, however, that after June 15, 2011, the treatment record "fails to document acute back pain symptoms." [AR at 17.] He noted that in August 2011 plaintiff reported "on and off chronic low back pain, which was controlled with medication," and for which he reported no new complaints. [Id. (citing AR at 284).] He also noted a November 10, 2011, treatment note that reflected "no pain symptoms," and a "completely normal" physical examination. [Id. (citing AR at 278).] While Dr. Bleecker in March 2012 noted "findings of diminished back, neck and bilateral hip range of motion," he also reported "normal neurological findings, negative straight leg raising findings, and a normal gait." [AR at 17 (citing

14

AR at 430-37).] Dr. Bleecker diagnosed degenerative disk disease and degenerative arthritis affecting the cervical and lumbar spines, and degenerative joint disease of both hips, but nevertheless concluded that plaintiff could sit or stand and walk six out of eight hours, required the use of a cane for short and long distance ambulation during periods of hip-related flare-ups, could only occasionally kneel, squat, climb and reach with either upper extremity above shoulder level, and could lift 20 pounds occasionally and 10 pounds frequently. [Id. (citing AR at 434).]

In short, the ALJ did review evidence of record dated prior to June 15, 2011, relating to plaintiff's hand, knee, and back pain. Having reviewed those records, he determined there was no current evidence of any significant treatment for the alleged impairments, and that plaintiff's impairments were controlled with his medication. The ALJ's conclusion is supported by substantial evidence and plaintiff does not direct the Court to any evidence before or after that date that would demonstrate otherwise. Therefore, the ALJ did not err when he determined there was no basis for reopening the prior determinations and restricted the period at issue to the period from June 15, 2011, and thereafter.

Remand is not warranted on this issue.

**C.    SUBJECTIVE SYMPTOM TESTIMONY**

Plaintiff contends the ALJ did not provide specific, clear and convincing reasons for discounting plaintiff's subjective symptom testimony. [JS at 19-20.] He specifically argues that there was ample evidence to support his allegations of debilitating hand pain, including the imaging study that revealed osteopenia of his bilateral hands, fracture deformity in the right fifth metacarpal and right third metacarpal heads with secondary degenerative changes, and Dr. Bleecker's finding of triggering of plaintiff's third, fourth, and fifth finger of the non-dominant hand. [Id. (citing AR at 416, 433).] He states that the ALJ's failure to credit plaintiff's testimony regarding his hand pain is not harmless error, because the VE testified as follows:

> Q:  If we limited that from frequent handling and fingering with the non-dominant hand to only occasional handling and fingering, would that eliminate then those

1 three jobs based on your description?[10]

2 A: Yes, it would because --

3 Q: Okay.

4 A: Yeah.

[AR at 56-57.] As noted above, plaintiff points to no objective evidence that would support a limitation to occasional handling and fingering with his left hand.

On March 16, 2016, after the ALJ's decision was issued in this case, SSR 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. Id. at *1. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id. Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." Id. at *10. Factors to be considered in evaluating a claimant's subjective testimony include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. Id. at *7. The ALJ is instructed to "consider all of the evidence in an individual's

---

[10] Based on a hypothetical from the ALJ that included an individual limited to frequent handling and fingering with the non-dominant hand, the VE had previously testified that for the small products assembler position, handling and fingering are "both frequent"; for the garment sorter position, "handling is frequent, fingering is occasional"; and for the merchandise marker position, "both handling and fingering is frequent per the DOT." [AR at 56.]

16

record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2.

Here, the ALJ discounted plaintiff's subjective symptom testimony based on "the extensive nature of his daily activities, albeit at a purportedly slow and interrupted pace." [AR at 18.] He noted plaintiff's November 2012 report that he walked up to one mile to do grocery shopping, "carefully carried home 2 bags of groceries, at most, weighing up to 10 pounds each," and a January 2012 statement where he stated he walked 1/2 hour daily, with a one hour rest after that, and engaged in daily mopping and vacuuming, and "constant cleaning of his home albeit at a slow pace." [Id. (citations omitted).] The ALJ also noted that plaintiff testified "he was forced to walk to the grocery store because two bicycles had been stolen from him," and his ability to ride a bicycle "also suggests significant physical capacity incompatible with his complaints of disability." [Id.] He also found that plaintiff's testimony that he engaged in "physically demanding day laborer work, during the period of alleged disability," "further render[ed] his allegations of debilitating pain less than credible."[11] [Id.] Finally, the ALJ noted that the treatment record after June 2011 "reflects largely unremarkable findings," and "the record is devoid of significant aggressive treatment such as orthopedic evaluation and care, surgery and pain management specialist treatment, which would suggest debilitating pain and impairments." [Id.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter, 504 F.3d at 1036) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not find evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and

---

[11] Although the ALJ worded this finding in terms of plaintiff's credibility, he nevertheless is addressing an inconsistency between plaintiff's subjective symptom statements and other record evidence as mandated by SSR 16-3p. See SSR 16-3p, 2016 WL 1119029, at *6 ("[W]e will evaluate whether the statements are consistent with objective medical evidence and other evidence.").

17

determine the extent to which [those] symptoms limit his . . . ability to perform work-related activities . . . ." SSR 16-3p, 2016 WL 1119029, at *4. An ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony about the severity of his symptoms. Treichler, 775 F.3d at 1102; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).

In this case, under either SSR 96-7p or SSR 16-3p, the ALJ provided specific, clear and convincing reasons for discounting plaintiff's testimony of debilitating hand, knee, and back pain, and those reasons are supported by substantial evidence in the record. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).

Remand is not warranted on this issue.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter, 504 F.3d at 1041; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there is an outstanding issue that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. Remand is required for the ALJ to obtain further VE testimony to resolve the inconsistency, if any, between plaintiff's RFC limitations to only occasional overhead reaching, and his need for a cane when ambulating, with the DOT descriptions of the representative occupations

testified to by the VE.[12] The ALJ should also consider the effect, if any, on plaintiff's change in age category between the date he filed his previous applications and the date he filed the current ones. If warranted, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.

## VII.
## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: October 6, 2016

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[12] Nothing herein is intended to disrupt the ALJ's RFC finding that plaintiff is limited to occasional overhead reaching with his upper extremities bilaterally, or needs to use a cane to ambulate, or his step four finding that plaintiff is unable to perform his past relevant work.